Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Danyan HE<br>Petitioner,<br>v.<br>James JANECHA, the Warden of the Adelanto ICE Processing Center;<br><br>Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. S. Department of Homeland Security;<br><br>Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Todd BLANCHE, in the Official Capacity, Attorney General of the United States.<br>Respondents | NO.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes;<br><br>Request for Declaratory and Injunctive Relief<br><br>**IMMEDIATE RELEASE REQUESTED** |

## I. INTRODUCTION

1. Petitioner Danyan He is a national of the People's Republic of China who came to the United States to seek asylum and who has done everything our laws ask of asylum seekers. She was inspected and lawfully admitted at Dallas, Texas on a B-2 visitor visa on January 14, 2026. She filed an affirmative application for asylum, which U.S. Citizenship and Immigration Services received on July 27, 2026 and which remains pending. USCIS then directed her to appear at an Application Support Center to give her biometrics. She went—voluntarily, to the federal office the Government told her to report to, in connection with the very application the Government told her to pursue. She has no criminal history of any kind.

2. On September 9, 2026, Petitioner reported to the USCIS El Monte Application Support Center in City of Industry, California, to comply with the biometrics appointment notice USCIS had issued to her. Inside that federal building—while doing exactly what the Government had instructed her to do—ICE officers arrested her. She was given no notice. She was given no hearing. No neutral decision-maker of any kind reviewed the decision to take away her liberty before it was taken. She has been confined at the Adelanto ICE Processing Center ever since.

3. Petitioner was arrested in the interior of the United States, at a federal agency office, nearly eight months after she was lawfully admitted. She never departed the United States and never presented herself at any border or port of entry seeking admission. Respondents themselves have charged her as a noncitizen who "has been admitted to the United States" and who is removable under INA § 237(a)(1)(B)—a ground of deportability that by its terms applies only to persons who were admitted. She is therefore not an "arriving alien" or an applicant for admission under 8 U.S.C. § 1225. She is a lawfully admitted noncitizen, she is not subject to mandatory detention, and her detention is discretionary under 8 U.S.C. § 1226(a). A discretionary decision by the enforcing

agency to seize a person who is living peaceably in the community—while her asylum application is pending, and at the very moment she is complying with a government directive—is precisely the kind of executive action the Due Process Clause was written to constrain.

4. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted). Nothing about this arrest was quick, unexpected, or impracticable to plan around. Respondents knew precisely where Petitioner would be and precisely when, because the Government itself had summoned her there in writing weeks earlier. Respondents had every opportunity to give Petitioner notice and an opportunity to be heard before seizing her. They gave her neither.

5. Even if Respondents later provide a custody hearing, it will not cure the violation, and this Court should not order one. As the Central District has held on this precise question, "[a] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing," and "the appropriate remedy for the deprivation is release from custody." *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4 (C.D. Cal. May 20, 2026); *Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

6. Petitioner does not ask this Court to order a bond hearing. She asks this Court to issue the writ and order her immediate release on reasonable conditions of supervision, and to bar

Respondents from re-detaining her absent notice and a constitutionally adequate pre-deprivation hearing before a neutral adjudicator.

## II. JURISDICTION

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus); U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act). Petitioner is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(1), (c)(3).

8. Federal courts retain jurisdiction under § 2241 to review the constitutionality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001). This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge a final order of removal—none exists; Petitioner's removal proceedings remain pending before the Adelanto Immigration Court, with her master calendar hearing not yet held—and the jurisdiction-channeling provisions of 8 U.S.C. § 1252 therefore do not bar this action. *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

9. The Court is directed to grant the writ or issue an order to show cause "forthwith," 28 U.S.C. § 2243, and to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## III. VENUE

10. Venue is proper in this district. A habeas petition challenging present physical confinement must be filed in the district of confinement and name the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, which lies within the Central District of California. 28 U.S.C. §§ 84(c), 2241(a).

## IV. PARTIES

11. Petitioner Danyan He is a native and citizen of the People's Republic of China, born September 30, 1992. She is detained at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301, under A# 242-521-222.

12. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate custodian, with day-to-day control over the facility where she is confined. *Padilla*, 542 U.S. at 435.

13. Respondent Jaime Rios is the Field Office Director of the ICE Los Angeles Field Office, Enforcement and Removal Operations, and is the ICE official with authority over Petitioner's detention and custody determinations. He is sued in his official capacity.

14. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

15. Respondent Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. DHS encompasses ICE and is charged with administering and enforcing the immigration laws. *See* 8 U.S.C. § 1103(a).

16. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. No statutory exhaustion requirement applies to a § 2241 petition challenging the constitutionality of immigration detention, and judicially created exhaustion is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be excused where administrative remedies are inadequate or not efficacious, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

18. Those conditions are met. The constitutional injury Petitioner alleges—deprivation of liberty without pre-deprivation process—is one the immigration courts have no jurisdiction to adjudicate and no power to remedy. An Immigration Judge cannot undo a completed constitutional violation or order release as a remedy for the denial of pre-deprivation process; the only relief the agency can offer is a custody redetermination—that is, more of the after-the-fact process that the case law holds insufficient to cure the injury. *See Zaitsev*, 2026 WL 1047942, at *7; *Zepeda Perez v. Santacruz*, 2026 WL 980492, at *5 (C.D. Cal. Apr. 9, 2026). Requiring exhaustion would also be futile and would compound the irreparable harm of each additional day of unlawful custody.

## VI. STATEMENT OF FACTS

### A. Lawful Admission and Pending Asylum Application.

19. Petitioner is a native and citizen of the People's Republic of China. She fled China because she suffered past persecution and fears future persecution if returned.

20. On January 14, 2026, Petitioner was inspected and lawfully admitted to the United States at Dallas, Texas on a valid B-2 nonimmigrant visitor visa. She did not enter without inspection. (Ex. 2, Notice to Appear, Allegation 3.)

21. Thereafter, Petitioner filed an affirmative application for asylum (Form I-589) with U.S. Citizenship and Immigration Services. USCIS received that application on July 27, 2026—well within one year of her arrival—and assigned it receipt number LGL2690073561. The application remains pending. (Ex. 3, USCIS Form I-797C Notices of Action.) Petitioner has a strong incentive to appear and prosecute it: if returned to China, she fears persecution.

22. Since her admission, Petitioner has lived openly at a known address, established community ties, and maintained a spotless record with no criminal history whatsoever. She has never before been detained.

**B. Petitioner Was Arrested at a USCIS Office While Complying With a Government Directive—Without Any Notice or Hearing.**

23. In connection with her pending asylum application, USCIS issued Petitioner a Form I-797C Notice of Action directing her to appear at the USCIS El Monte Application Support Center, 17843 Colima Road, City of Industry, CA 91748, for biometrics collection. That notice, dated August 18, 2026, set her appointment for September 9, 2026 at 10:00 a.m. (Ex. 4.) The notice warned in bold that failure to appear "will result in an applicant-caused delay," that USCIS "may … dismiss your asylum application," and that USCIS may "refer your application to an immigration judge."

24. Petitioner did exactly what the Government asked of her: she went to the federal office USCIS had told her to report to. On September 9, 2026, Petitioner appeared at the USCIS El Monte

Application Support Center for the 10:00 a.m. appointment USCIS had set for her that day, so that her biometrics could be completed.

25. While Petitioner was inside the USCIS office, ICE officers arrested her—without a judicial warrant, without any prior notice, and without a hearing. No judge, no magistrate, and no Immigration Judge—no neutral decision-maker of any kind—reviewed the decision to deprive her of her liberty before it was taken.

26. Because Petitioner had been lawfully admitted nearly eight months earlier and was arrested in the interior of the United States, she is not an "arriving alien" or an applicant for admission subject to 8 U.S.C. § 1225. Respondents' own charging document confirms as much: the Notice to Appear checks the box stating that Petitioner "has been admitted to the United States, but [is] removable," and charges her under INA § 237(a)(1)(B), which applies only to noncitizens who were admitted. (Ex. 2.) She is not subject to mandatory detention. Her detention is discretionary under 8 U.S.C. § 1226(a).

27. Petitioner was transported to and delivered at the Adelanto ICE Processing Center, where she has remained in continuous custody since September 9, 2026.

28. There was no emergency, no exigency, and no risk of flight that pre-deprivation notice would have created and that the Government could not have managed. Petitioner had filed for asylum, had been directed by the Government to report to a specific federal office, and voluntarily presented herself there. Respondents knew where Petitioner would be because the Government itself had told her to be there. Providing notice and a hearing before any arrest was entirely practicable. Respondents simply did not do it.

29. Petitioner's voluntary appearance at the very office where she was seized is powerful evidence that she is not a flight risk. The Government cannot credibly assert that a person who walks into a federal building because a notice told her to must be jailed to secure her appearance.

**C. Petitioner Is Now in Removal Proceedings and Has a Hearing Days Away.**

30. Following her arrest, Respondents served Petitioner with a Notice to Appear (Form I-862) dated September 9, 2026, charging her as removable under INA § 237(a)(1)(B) for remaining beyond the period of her admission, and placed her in removal proceedings before the Immigration Court at 10250 Rancho Road, Suite 201A, Adelanto, CA 92301. (Ex. 2.) As reflected in EOIR's Automated Case Information system, with a docket date of September 10, 2026, Petitioner's master calendar hearing is set for September 22, 2026 at 8:00 a.m. before Immigration Judge Jonathan Masaji Brent, to be conducted by internet-based video. (Ex. 1.) Her case is pending; no decision has issued, no appeal is on file, and no final order of removal exists.

31. Petitioner intends to appear at that hearing and to continue prosecuting her asylum claim.

32. Petitioner's detention is also actively obstructing the very application the Government told her to pursue. Petitioner was seized before her biometrics were completed, and she asks to be released so that she can complete her fingerprints. USCIS's own notice warns that failure to complete biometrics "will result in an applicant-caused delay" and may lead USCIS to dismiss the asylum application or refer it to an immigration judge. Respondents have thus placed Petitioner in the position of being penalized for a default that Respondents themselves caused.

33. Petitioner's confinement is causing her ongoing harm. She asks only to be released so that she can complete her biometrics and continue to pursue asylum.

## VII. LEGAL ARGUMENT

**A. Petitioner Holds a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before Respondents Seized Her.**

34. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). That protection runs to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *accord Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Demore*, 538 U.S. at 523.

35. The Government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Because Petitioner is a § 1226(a) detainee and not subject to mandatory detention, no statute compelled her seizure. Respondents' decision to take her into custody was a pure exercise of executive discretion over a person living at liberty in the community—and is therefore subject to the full requirements of the Due Process Clause, including its requirement of pre-deprivation process.

36. A noncitizen living at liberty in the United States has a due-process interest in "an opportunity or a hearing *before* [s]he is deprived of any significant protected interest." *R.A.N.O. v. Wofford*, 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026) (emphasis in original); *see also E-M v. Hermosillo*, 2026 WL 883776, at *6 (D. Or. Mar. 31, 2026); *Singh v. Noem*, 2026 WL 766228, at *9 (D.N.M. Mar. 18, 2026). The rule that process must precede deprivation is the constitutional default. *Logan*, 455 U.S. at 436. Post-deprivation process suffices only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation omitted). This is not such a case. The Government scheduled the encounter itself.

37. Nor did any ICE administrative warrant supply the missing process. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001). A warrant the enforcing agency writes for itself is the opposite of neutral review. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011) (risk of erroneous deprivation is reduced where a neutral decision-maker, rather than ICE alone, makes custody determinations).

**B. Every Mathews Factor Confirms That Pre-Deprivation Process Was Required.**

38. What process is due is determined by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interest affected; the risk of erroneous deprivation and the value of additional safeguards; and the Government's interest. *See generally Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Each factor favors Petitioner.

39. *First*, the private interest is at its maximum. Petitioner's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Liberty permits her to live in the community, to complete the biometrics USCIS demanded, to prosecute her asylum claim, and to "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

40. *Second*, the risk of erroneous deprivation from a unilateral ICE arrest reviewed by no one is high, and pre-deprivation safeguards "would greatly reduce the risk" of an erroneous deprivation of liberty. *Singh*, 2026 WL 766228, at *9. Had Petitioner been heard before her seizure, she could have presented her lawful admission, her pending asylum application, her community ties, and—most tellingly—the government notice that had brought her to the very building where she was arrested, demonstrating that she is neither a danger nor a flight risk.

41. *Third*, the Government's interest in seizing Petitioner without any prior process is low. Civil immigration detention is not punitive; the only legitimate interests are preventing danger and securing appearance. *Zadvydas*, 533 U.S. at 690. Petitioner presents neither concern—she has no criminal history and every incentive to appear, as her voluntary attendance at the ASC appointment proves. "[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" *R.A.N.O.*, 2026 WL 40507, at *7 (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). The burden of providing notice and a hearing is minimal—the Government runs custody hearings every day—while "[t]he costs to the public of immigration detention are 'staggering.'" *Hernandez*, 872 F.3d at 996. This is not the "special instance … where post-deprivation process is all that is due." *Zinermon v. Burch*, 494 U.S. 113, 139 (1990).

**C. A Post-Deprivation Bond Hearing Cannot Cure the Violation, and the Court Should Not Order One.**

42. Respondents may argue that Petitioner can seek a bond hearing before an Immigration Judge. That is no answer. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Zaitsev*, 2026 WL 1047942, at *7; *accord Zepeda Perez*, 2026 WL 980492, at *5; *E.G.M. v. Scott*, 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026) ("any post-deprivation remedies … do not cure the constitutional violation"). In *Mikayelyan*, the Central District confronted this argument directly and, even though the petitioner had already received a bond hearing at which the Immigration Judge denied bond, granted the writ and ordered release, holding "the appropriate remedy for the deprivation is release from custody." Dkt. No. 19, at 4; *accord Singh*, 2026 WL 766228, at *10.

43. The reason is structural: the injury *is* the detention. Even if Petitioner were given a flawless hearing tomorrow and released, she "will have already suffered the harm … [of her] potentially erroneous detention." *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (alterations added). Ordering a do-over hearing would ratify the very sequence the Constitution forbids—seize first, justify later—and would leave Respondents free to repeat it tomorrow, including at the next USCIS appointment any asylum seeker is ordered to attend. Petitioner therefore does not seek, and does not consent to, an order directing a bond hearing in lieu of release.

**D. The Only Adequate Remedy Is Immediate Release.**

44. "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Where the Government has detained a person without the pre-deprivation process the Constitution requires, "the appropriate remedy for the deprivation is release from custody." *Mikayelyan*, Dkt. No. 19, at 4. Courts in this District have ordered release on comparable facts, recognizing that the deprivation of physical liberty is itself irreparable harm. *See, e.g., Jin Liu v. Noem*, No. 5:26-cv-00325-CAS-DTB (C.D. Cal. Jan. 30, 2026); *Tur-Sarksyan v. Bondi*, No. EDCV 26-00696-MWF (C.D. Cal. Feb. 23, 2026).

## VIII. CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Procedural Due Process—Detention Without Pre-Deprivation Notice and Hearing
### (U.S. Const. amend. V)

45. Petitioner re-alleges and incorporates by reference each preceding paragraph.

46. Petitioner held a constitutionally protected liberty interest in remaining free from physical confinement. Respondents deprived her of that interest on September 9, 2026 without notice, without a hearing, and without review by any neutral decision-maker.

47. No exigency, emergency, or impracticability excused pre-deprivation process. Petitioner was a lawfully admitted noncitizen with a pending asylum application who had presented herself at a federal office at the Government's own written direction; notice and a hearing before any arrest were entirely practicable. The violation was complete upon her detention and cannot be cured by a later bond hearing. The Court should grant the writ and order Petitioner's immediate release.

**COUNT TWO**
**Violation of Substantive Due Process—Detention Untethered to Any Permissible Purpose**
**(U.S. Const. amend. V)**

48. Petitioner re-alleges and incorporates by reference each preceding paragraph.

49. Civil immigration detention may serve only two permissible purposes: preventing danger to the community and securing the noncitizen's appearance at removal proceedings. *Zadvydas*, 533 U.S. at 690. It may not be punitive.

50. Petitioner has no criminal history and has been found by no adjudicator to be dangerous. She entered lawfully, has a pending asylum application, and was seized while voluntarily appearing at a government-scheduled appointment—giving her the strongest possible incentive, and demonstrated record, of appearing. She has a master calendar hearing days away that she intends to attend. Her detention is therefore not reasonably related to any legitimate purpose and violates substantive due process. The Court should grant the writ, order her immediate release, and enjoin Respondents from re-detaining her absent constitutionally adequate pre-deprivation process.

## IX. PRAYER FOR RELIEF

WHEREFORE, Petitioner Danyan He respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that Petitioner's detention—effected on September 9, 2026 without notice and without a hearing before a neutral adjudicator prior to the deprivation of her liberty—is unlawful and violates the Due Process Clause of the Fifth Amendment;

(3) Declare that any post-deprivation bond hearing did not and cannot cure that violation;

(4) Issue a Writ of Habeas Corpus and ORDER Respondents to release Petitioner from custody IMMEDIATELY, on reasonable conditions of supervision, restoring the conditions of liberty that existed before her arrest and without imposing any new restraint—including electronic monitoring—absent a subsequent, constitutionally adequate pre-deprivation determination that such a restraint is necessary;

(5) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(6) Enjoin Respondents from re-detaining Petitioner absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention;

(7) Enjoin Respondents from transferring Petitioner outside the Central District of California pending resolution of this Petition;

(8) Award Petitioner reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(9) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 14, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.
Attoney for Petitioner
CA Bar No. 348506
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioners because I am one of Petitioners' attorneys. I have discussed with the Petitioners the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on September 14, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski
Hovhannes Bayburtski, Esq.
Attorney for Petitioner